## UNITED STATES v. TUBERCLECIDE CO.

(District Court, S. D. California. May 15, 1916.)

1. DRUGGISTS ⬅12—MISBRANDING—OFFENSES.
    In a prosecution for the alleged misbranding of a medicine, brought under Food and Drugs Act, § 8, par. 3, it is essential to a conviction that the statements on the label of the medicine alleged to have been misbranded be shown to be both false and fraudulent.

2. DRUGGISTS ⬅12—OFFENSES—MISBRANDING—EVIDENCE.
    In a prosecution under Food and Drugs Act, § 8, par. 3, for the alleged misbranding of a medicine sold as a remedy for tuberculosis, evidence *held* insufficient to show that the statements appearing on the labels were false.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The Tuberclecide Company, a corporation, was charged by information with violating Food and Drugs Act, § 8, par. 3. Dismissed.

On May 15, 1916, the United States attorney for the Southern district of California, acting upon a report by the Secretary of Agriculture, filed in the District Court of the United States for said district an information against the Tuberclecide Company, a corporation, Los Angeles, Cal., alleging shipment by said company, in violation of the Food and Drugs Act (Act June 30, 1906, c. 3915, 34 Stat. 771), as amended (Act Aug. 23, 1912, c. 352, 37 Stat. 416 [Comp. St. 1916, § 8724]), on or about August 25, 1914, from the state of California into the state of Arizona of quantities of an article labeled in part, "Tuberclecide," which was misbranded.

Analysis of a sample of the "Tuberclecide," by the Bureau of Chemistry of this department, showed that it consisted essentially of creosote carbonate with traces of creosote and water; specific gravity, 20° C., 1.164.

Analysis of the plaster, which accompanied the article, showed the following composition:

Odor indicates tar oil and camphor.

| | |
|---|---|
| Atropine | Present. |
| Rosin | Present. |
| Petrolatum | Present. |
| Vesicating agents | Absent. |
| Lead soap | Absent. |

Consists essentially of rosin, petrolatum, atropine, with indications of tar oil and camphor.

Analysis of the "Metablitone," which accompanied the article, showed:

| | |
|---|---|
| Alcohol (per cent. by volume) | 45.9 |
| Methyl alcohol | Absent. |
| Strychnine | Present. |
| Quinine | Present. |
| Other alkaloids | Not detected. |
| Solids (grams per 100 cc.) | 14.55 |
| Ash (gram per 100 cc.) | 0.42 |
| Aesculin | Indicated. |
| Extractives | Large amounts. |

Summary: A hydroalcoholic solution of extractives carrying quinine, strychnine, and indications of aesculin.

It was alleged in substance in the information that the article described as "Tuberclecide" was misbranded, for the reason that certain statements appearing on its labels falsely and fraudulently represented it to be effective as a remedy for tuberculosis (or consumption), and effective when used in connection with "Metablitone" as a reliable treatment for tuberculosis, and effective when used in connection with the plasters accompanying said articles as a remedy for tuberculosis, and effective when taken in doses of 14 drops in the capsules accompanying said articles as a remedy for tuberculosis, when, in truth and in fact, it was not so effective when used as described, or when used in connection with any plasters, or when taken in any quantity in any capsules or in any other manner. It was alleged in substance that the article was misbranded, for the further reason that certain statements included in the circular accompanying the article falsely and fraudulently represented it to be effective as a remedy, reliable treatment, and cure for tuberculosis, and also to be effective as a remedy, reliable treatment, and cure for tuberculosis when used in connection with the tonic, when taken in number 0 capsules, and when used in connection with the chest pads, when, in truth and in fact, it was not so effective when used as described, or when taken in any capsule, or when used with any chest pads.

On December 13, 1916, the case having come on for trial before the court, after the submission of evidence and arguments by counsel, the information was dismissed.

Clyde R. Moody, Asst. U. S. Atty., of Los Angeles, Cal., and J. B. Horigan, of Washington, D. C., for the United States.

Dudley W. Robinson, of Los Angeles, Cal., for defendant.

TRIPPET, District Judge (orally).   [1, 2]  This action is brought under the paragraph denominated third of section 8 of the Food and Drug Act, approved June 30, 1906.   That third paragraph reads as follows:

"If its package or label shall bear or contain any statement, design, or device, regarding the curative or therapeutic effect of such article or any of the ingredients or substances contained therein, which is false and fraudulent," it shall be deemed misbranded within the meaning of the act.

The action is one alleging that this shipment in interstate commerce contained a misbranding under the paragraph quoted.   It is necessary for the government to establish that the package or label was both false and fraudulent.   The word "Tuberclecide" is used, and that is claimed to be a misbranding.   The word "Tuberclecide" is a coined word.   It has no meaning aside from the meaning which is given to it by the people that coined it and put it out.   The evident purpose of the word, and of the representations accompanying the word, is to indicate that it is a remedy or cure for tuberculosis.   The representations do not go any further, as I understand it, than to assert that it is a remedy for tuberculosis.   Now, let us consider first whether or not this thing is false.   I want it distinctly understood that I have not decided, and will not decide, because it is not necessary, that this medicine will cure or will not cure, that it will remedy or will not remedy, tuberculosis.   It is not necessary for me to decide that it is or is not a remedy for it, and I am not going to decide that.   I may say, however, that that is one of the things which it was necessary for the government to prove—that the claims made for this medicine were false.

The government produced physicians, the most eminent in this city, graduates of the best colleges, who testified upon the subject, and I take it from their testimony that they conclude that there is no cure, in the sense in which that word is understood, for tuberculosis; that there is no specific remedy for it.   In that connection, however, I do not construe this medicine as being advertised as a specific.   I think it is fair to say that they do not advertise that it is a specific for consumption.   The physicians brought by the government testified that creosote carbonate has been discarded, as a remedy for tuberculosis, for a great many years.   Creosote carbonate is one of the ingredients of this medicine.   According to the analysis given by the chemist testifying on behalf of the government, that is the principal ingredient of this medicine.   Now, the defense brings an equal number of physicians.   So far as I know, they are regular physicians, of good repute, graduates from good colleges, who testify that creosote carbonate is used to-day as a remedy for tuberculosis.   They not only do that, but they bring standard medical works, one printed this year, which say that it is used as a remedy for tuberculosis.

Aside from that, however, the government produced a chemist who testified that he analyzed a bottle of the stuff, and it seems that he

used practically all of the contents of the bottle to make the analysis; there is not a half a teaspoonful left in the bottle. He found certain things in this bottle. The man that got up this medicine testified that it had many other things in it, at least four more ingredients than the chemist gave. The government offers no proof whatever that the testimony of that man is false. There is no proof offered on the subject, but I believe it is a fact that chemists cannot always tell what is in a mixture. It seems to me that, if the government claimed that this medicine did not contain the four other things which the man that manufactured it said it contained, it was up to the government to produce that testimony. The government has another quantity of this medicine, and refused to produce it for the defense. I do not like that attitude.

Now, these physicians, on behalf of the government, testified that a medicine containing the ingredients which the government chemist testified this medicine contains would have no remedial effect upon a consumptive. They were testifying about this medicine as analyzed by this chemist. They were not testifying about this medicine according to its true properties, as proven by undisputed evidence in this case. There are four other ingredients in this medicine, according to the undisputed testimony of the manufacturer. They do not say anything about the medicine as it is proven to be; that is, about the actual ingredients of the medicine. I repeat that I am not deciding that this stuff is a remedy, or is not a remedy, for tuberculosis.

In addition to proving that the statements are not true, the government must show that they are fraudulent. Now, a man may make a statement that is not true; but if he believes it to be true, and is warranted by his information in making the statement, it is not fraudulent. What do these people do that are going to buy this formula and sell this medicine? They get physicians to examine patients that have been treated with it. I think they had four physicians to investigate it, and these physicians advised them that it was a remedy for tuberculosis. Aside from that, they bring three physicians here who say that they have prescribed this stuff to patients, and that it has proven itself by experience to be a remedy. The government doctors never prescribed it to any person, while one of the witnesses for the defense testified that he had treated 3,000 patients with it, with good results. Do not these people representing defendant have a right to act upon that? Can anybody say that they willfully falsified anything in the face of that testimony? We all know from our own observations that doctors disagree. I have heard them disagree in making sworn statements in this court many a time. Schools of physicians disagree. One school thinks that the other school does not know anything, and that they are practicing fraud and deception. Can it be fairly said that a man is practicing a fraud when he acts upon the advice of a physician, although other physicians disagree with him? Have we come to such a pass that fraud can be attributed to a man when he accepts the advice of a doctor, or several doctors, notwithstanding that other physicians may disagree with those whose advice he accepts? For my part, I cannot see why a man cannot act in per-

fect good faith in following the advice of any doctor that he chooses to consult, if he acts with fair intelligence in getting that advice. The doctors that advised these people are all licensed physicians, and why could they not accept their advice?

Let me illustrate my idea of this case by a supposititious one. Take vaccine. Vaccine is a coined word. It means what the coiner of the word meant for it to mean, namely, that vaccine is a preventive of smallpox. Suppose a party should transport vaccine in interstate commerce under an advertisement that it was the only known remedy for preventing smallpox, and that it would prevent smallpox. Suppose the government were to prosecute him under this statute. Suppose the government could bring physicians who would testify that vaccine would not prevent smallpox; that it was not only not a preventive, but that it was positively injurious to those who used it. This is by no means an improbable presumption. Then the defense would bring in an array of physicians to testify that it would prevent smallpox. Would any court convict the man that shipped the article for fraud in misbranding it?

The prosecution in this case seems to want to make a point of the fact that the man who prepared the formula for Tuberclecide was not a licensed physician, nor a graduate of any college, although he did practice medicine for several years. Dr. Jenner, who discovered vaccine, did not do it by any scientific method. He discovered it from deduction from the fact that milkmaids did not have smallpox, or, if they did have it at all, they had it only in a mild form. It did not take a graduate from any college, or a licensed physician, to make that deduction, and the same might probably be said concerning Tuberclecide. I cannot see how these people were practicing a fraud in the face of the testimony in the case. They believed they were doing good.

The case will be dismissed.

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes